## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James E. Thornberg,                         Civ. 14-cv-122 (SRN/JJK)

        Plaintiff,

v.

State Farm Fire and Casualty                **REPORT AND**
Company, Dale Gerdin, Carol                 **RECOMENDATION**
Gerdin, and John & Jane Does 1–5

        Defendants.

James E. Thornberg, Reg. 08615-029, Federal Correctional Institution, Lompoc, 3600 Guard Road, Lompoc, CA 93436, *pro se*.

Michael J. Tomsche, Esq., Tomsche, Sonnesyn & Tomsche, P.A., counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

This case is before the Court on Defendants Dale and Carol Gerdin's ("Gerdins") 12(b)(6) Motion to Dismiss and Alternatively for Summary Judgment (Doc. No. 50) and Plaintiff's 15(a)(2) Motion to Amend (Doc. No. 62). Plaintiff claims that he suffered damages as a result of the loss of his personal items left in the care of the Gerdins. The Gerdins argue that Plaintiff's causes of action are time-barred. This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, this Court recommends that the Gerdins' motion to dismiss be **GRANTED** and Plaintiff's motion to amend be **DENIED**.

**BACKGROUND**

## I.   Procedural History

Plaintiff commenced this action on January 14, 2014 by filing a Complaint seeking relief against the Gerdins based on various state common-law legal theories relating to deprivation of personal property. (Doc. No. 1, Compl.) Upon initial review, it appeared to this Court that all of Plaintiff's claims appear to be barred by the six-year statute of limitations set forth at Minnesota Statutes § 541.05. (Doc. No. 11, Order 2.) Rather than summarily dismiss Plaintiff's Complaint at that time, however, this Court granted Plaintiff leave to submit a legal memorandum with a supporting affidavit explaining why his claims are not time-barred. (Order 2.) Plaintiff submitted a Memorandum of Law with Declaration on June 20, 2014. (Doc. No. 15, Pl.'s Br.; Doc. No. 18, Decl.)

After receipt of these documents, State Farm Fire and Casualty Company ("State Farm") filed a Motion to Dismiss and accompanying Memorandum in Support on September 12, 2014. (Doc. Nos. 25 & 27.) On November 19, 2014, this Court recommended that Plaintiff's claims against State Farm be dismissed with prejudice. (Doc. No. 47.) The District Court adopted that recommendation on December 5, 2014 and dismissed Plaintiff's claims against State Farm. (Doc. No. 49.)

The only other named defendants, Dale and Carole Gerdin, filed a Motion to Dismiss and Alternatively for Summary Judgment on January 13, 2015. (Doc. No. 50.) The Gerdins also filed memoranda supporting their motion (Doc. No. 51, Defs.'s Mem.) and in reply to Plaintiff's opposition. (Doc. No. 65, Defs.'s Reply.)

Plaintiff filed a Motion for Leave to Amend Plaintiff's Complaint Pursuant to Rule 15(a) with an accompanying memorandum on February 23, 2015. (Doc. No. 62, Pl.'s Mot. to Amend; Doc. No. 63, Pl.'s Mem. to Amend.) The Gerdins oppose this motion with their Memorandum in Opposition, filed on February 26, 2015. (Doc. No. 66, Defs.'s Opp.)

Accordingly, this Court now considers the Gerdins' motion to dismiss under Rule 12(b)(6) and Plaintiff's motion to amend the complaint under Rule 15(a)(2).

## II.     Factual Background[1]

Plaintiff was living and working in California when he learned in March 1998 that his mother was seriously ill and in a hospital near Minneapolis, Minnesota. Upon receiving this news, Plaintiff flew to Minnesota, where he rented an apartment in Robbinsdale, Minnesota, from the Gerdins in December 1998. In addition to the apartment, Plaintiff rented a storage locker in a locked storage room in the basement of the apartment building. Plaintiff had a key to the storage room and used his own padlock to secure his locker.

---

[1] Unless otherwise specified, this section consists of information found in Plaintiff's Declaration. (Doc. No. 18.)

In the summer of 1999, Plaintiff returned to California. He offered to give his Minnesota apartment's furnishings to his niece, Janeen Godinas, who accepted Plaintiff's offer and stated she "would arrange for [the furnishings] to be picked up." (Decl. ¶20.) Plaintiff scheduled the pick-up for the weekend of July 1, 1999. He provided oral instructions to Godinas that she could take anything in the apartment but that his storage locker was "out of bounds"; he left a note in his kitchen with the same instructions.

Godinas arranged for Steven Thornberg, Plaintiff's brother, to pick up the property. Plaintiff alleges that, on July 1, 1999, Thornberg "used a plastic card to jimmy the lock" and enter the storage room, then "broke the hasp and the lock" on a storage locker that was not Plaintiff's. Plaintiff maintains that the Gerdins then entered the room and "informed [Thornberg] that he broke into the wrong locker and . . . instructed him to break into Locker #7 as that was [Plaintiff's] locker." (*Id.* at ¶24.) Thornberg and the Gerdins then proceeded to remove "everything that [Plaintiff] owned in the world . . . including [Plaintiff's] entire business . . . titles to [Plaintiff's vehicles], [Plaintiff's] bank records," and numerous other items. (*Id.*; s*ee also* Doc. No. 1-1, App. Ex. A.)

Plaintiff does not state when he discovered the loss of his possessions. He does, however, assert that he reported the alleged theft to the Robbinsdale, Minnesota, police department, which "didn't do anything" in response to the

report even though Plaintiff provided them with a "Black Book[2] [containing evidence] to show them the case." (Decl. ¶¶25-26.) Plaintiff also states that he reported his loss to Dale Gerdin's insurer, State Farm. While the record includes no police report, it includes a letter from State Farm to Plaintiff dated September 27, 1999, written in response to "the recent information [Plaintiff] submitted as documentation for [his] loss." (Doc. No. 1-1, App. Ex. B.) The insurer stated that, after investigation of Plaintiff's claim, it "ha[d] not established [the] insured had any involvement in the alleged loss of [Plaintiff's] property." (*Id.*) State Farm continued: "[Plaintiff's] own statements have indicated [he was] aware who did remove [his] property and where it was stored once it was removed. [Plaintiff] further indicated it was the actions of those individuals which . . . led to the loss of [his] property once it was removed." (*Id.*)

Plaintiff maintains that the Gerdins "fraudulently concealed their robbery" of Plaintiff in multiple ways. First, he alleges that the Gerdins told the Robbinsdale police that Plaintiff "made it all up for insurance fraud" and thereby "made police not investigate" the alleged incident. He next claims that they lied to State Farm, alleging that Plaintiff "had 'imagined' the robbery, that [the Gerdins] were helping Plaintiff by taking his property, that Plaintiff had authorized a third party to take it, [and] that this was some type of fraud by Plaintiff." (Compl. 4.) Plaintiff states

---

[2] Plaintiff did not submit a copy of his "Black Book" to this Court, although it appears he previously distributed copies of it to three law-enforcement entities and one named individual in addition to State Farm.

that, in response to these misrepresentations, State Farm failed to investigate the alleged incident and was "negligent . . . by not interviewing [the Gerdins] and the witnesses [in the] (black book provided by Plaintiff) [sic]." (Compl. 5.)

Plaintiff contends that the Gerdins actively sought to destroy Plaintiff's reputation. Together with other members of the "Gerdin Klan,"[3] the Gerdins "took [Plaintiff's] business records and began telephoning [his] suppliers, banks, and customers . . . trying to promote them to charge [Plaintiff] with a crime." (Decl. ¶30.) Plaintiff went into "hiding" at a hotel in Wisconsin, where he was arrested "on 'suspicion.'" (*Id.*) On another occasion, in Iowa, he was picked up for speeding and then jailed for a theft he allegedly committed in South Dakota. Plaintiff maintains "it only took the Gerdin Klan 6 weeks to create [this] crime and get me chargd [sic] with cheating a customer." (*Id.*) Yet he "had no defense because [his] entire business was stolen" and "nobody would believe [Plaintiff] because the Gerdins had lied to authorities and State Farm and concealed their crime and now they were silencing [Plaintiff] forever by getting [him] imprisoned. . . ." (*Id.*) In response to the Gerdins' "stalking, assaults, and terrorization," Plaintiff "utilized at least 14 medical facilities to save [his] life." (*Id.* at ¶34.) He even adopted an alias, obtaining a driver's license and passport in the name of "Joe Bell." (*Id.*)

---

[3] According to Plaintiff, the "Gerdin Klan" consists of the Gerdins, Steven Thornberg, and seven other individuals.

Eventually, Plaintiff was faced with a federal charge in South Dakota "because [he] did not show up for the state charges." (*Id.* at ¶37.) The Gerdins "assisted the Feds in locating [him] so that [they] could arrest [him]" and transport him to Pierre, South Dakota. (*Id.*) While in custody, the Gerdins and other "Klan" members "began an even more sinister and violent assault to injure [Plaintiff] and to conceal their . . . robbery of [him]." (*Id.*) They created a false FBI "wanted" poster picturing Plaintiff and stating false information about crimes he allegedly committed. While Plaintiff was in jail, "Klan" members sent letters to the "judge, U.S. Attorney[,] or Probation"; the court then "put [the false information] into [Plaintiff's] Pre-Sentence Report," resulting in a "significantly enhanced" sentence. (*Id.* at ¶¶40-41.)

Plaintiff maintains that the Gerdins "succeeded in reversing their robbery . . . with a series of lies and libels [] criminaliz[ing] [Plaintiff] and then promoting [his] arrest, then the Federal indictment . . . and lengthening [his] time in prison." (*Id.* at ¶41.) Plaintiff "could not defend [himself]. . . . [A]ll [he] could do was remain silent. . . ." (*Id.*) Finally, while Plaintiff was in prison, the "Gerdin Klan" wrote letters to prison officials to "get [Plaintiff] labeled psychotic or mentally ill and make permanent their concealment." (*Id.* at ¶¶47-48.)

Despite Plaintiff's contention that the Gerdins concealed their July 1, 1999 robbery, he also alleges that both the Gerdins and Thornberg made statements acknowledging their involvement in the incident. According to Plaintiff, a U.S.

Attorney told him that "the Gerdin Klan" stated at Plaintiff's April 29, 2002, sentencing hearing, "'[y]es, we took [Plaintiff's] property but he authorized us to do it, he left a note saying this.'" (*Id.* at ¶57.) In 2002, the Gerdins allegedly told a federal judge and probation officer, "[y]es, we took his stuff and stored it safely for him and he is welcome to come and pick it [up] anytime he can." (*Id.*) In a letter to Plaintiff dated July 10, 2002, Steven Thornberg wrote:

> When the Robbinsdale detective called me in I was able to provide him with a detailed record of your prior behavior and he saw it, rightly, as a case of insurance fraud not burglary. You had NO valuables! It was not worth my time to move your stuff out of there but I did it because Dale Gerdin owned the building and I was cleaning up another one of your messes.

(Doc. No. 18, App. B.) Finally, Plaintiff submitted an e-mail that his sister, Susan Mericle, sent to him sometime after 2000.[4] (Doc. No. 18, App. E.) The e-mail included a message allegedly written by Steven Thornberg to Mericle stating, "I was still able to pull off the robbery in broad daylight." (*Id.*)

Years later, Steven Thornberg made statements to a private investigator hired by Plaintiff in 2010.[5] (Doc. No. 18, App. A.) According to the investigator's report:

---

[4]    The final digit of the four-digit year appearing at the top of the e-mail is illegible.

[5] Plaintiff also contacted State Farm a second time in 2012; in a letter to Plaintiff dated September 14, 2012, the agency provided the same basic response as it had in 1999. (*See* Doc. No. 1-1, at 11; *see supra* p. 4.)

> Steven said that many years ago at the request of [Plaintiff], he retrieved [Plaintiff's] personal property from an apartment in Richfield. The building manager insisted that he also take all property in a storage closet assigned to the apartment. He took the property to their father's house where it was stored in a shed. He said that the property was eventually retrieved by [Plaintiff]. He said he watched [Plaintiff] and a friend load the property in a U-Haul trailer.

(*Id.*) Plaintiff states he also hired a private investigator in Duluth, Minnesota. To this investigator, Steven Thornberg stated, "Yes, I took Jim's property. I did it because Dale Gerdin asked me to and he owned the apartment building." (*Id.*)

Plaintiff construes these statements as evidence that his brother and the Gerdins fraudulently concealed the theft of his belongings. Plaintiff further maintains that that he has successfully "induced the Defendants or their alter-egos and cohorts to write to [Plaintiff] directly . . . their confessions, their bragging of how they 'fixed [him].'" (*Id.* at ¶79.) He has obtained this and other "new evidence" during the past six years, "a time when [the Gerdins] felt safe under the protection of the Statute of Limitations." (*Id.*) In support of his theory, Plaintiff points to a declaration by Steven Howard Olson, a friend and former employee of Plaintiff, in which Olson states that Steven Thornberg "likes to brag about [the] theft of all of his Brother Jim Thornberg's personal and business property because the statute of limitations has expired." (Doc. No. 18, App. D, at 9, 15.)

This Court notes that Plaintiff was sentenced in 2002 to 96 months imprisonment after pleading guilty to wire fraud and money laundering.

Memorandum Opinion and Order, United States v. Thornberg, Crim. 10-80 (ADM/JSM) (D. Minn. May 9, 2014).[6] In 2003, while serving his sentence at a federal prison camp in Duluth, Minnesota, Plaintiff escaped from custody. *Id.* Over six years later, in March 2010, Plaintiff was apprehended and charged with escape from custody in violation of 18 U.S.C. § 751(a). *Id.* The jury found Plaintiff guilty of escape, and a federal court sentenced him to 30 months' imprisonment to be served consecutively to completion of his earlier sentence for fraud and money laundering. *Id.* Plaintiff appealed this sentence, and the Eighth Circuit Court of Appeals affirmed. *Id.* Plaintiff does not allege that he made any attempt to recover his losses during the six-year period of time during which he was evading authorities.[7]

## DISCUSSION

### I.    Motion to Dismiss Under Rule 12(b)(6)

The Gerdins seek dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's claims are barred by the relevant

---

[6] This Court has not been specifically advised of the file number of Plaintiff's federal criminal case. However, Plaintiff references District of South Dakota file number CR 3-30081. For the purpose of summarization of facts, the Court cites to the District Court's Memorandum Opinion and Order regarding Plaintiff's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence for a recitation of the facts underlying his incarceration, escape, and re-apprehension.

[7] Plaintiff explains his absence from federal custody as an attempt to escape Steven Thornberg, whom he claims was stalking him at the prison camp in Duluth by circling the camp; Plaintiff escaped by walking down the highway. (Decl. ¶76.)

statutes of limitations. (Doc. No. 50.) Rule 12(b)(6) provides an avenue for dismissal of claims that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss claims under 12(b)(6) if the complaint itself establishes that the claims are time-barred. *Patel v. Trivedi*, 536 Fed. Appx. 673, 673 (8th Cir. 2013) (citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). When a movant asks a court to consider matters outside the pleadings and the court considers such matters, however, a motion under Rule 12(b)(6) must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d).

The Gerdins presented and discussed substantial material outside of Plaintiff's Complaint, (*see generally* Defs.' Mem.), and the Court concludes that it is appropriate to convert the Gerdins' motion to dismiss to one for summary judgment. "A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). The non-moving party may not, however, rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23.

It is unusual for courts to grant summary judgment before a plaintiff has conducted formal discovery. Rule 12(d) requires that, upon conversion of a motion to dismiss to one for summary judgment, the court should allow parties "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Rule 56(d) allows non-movants to demonstrate to the court that essential facts must be developed before a ruling on a summary judgment motion. Fed. R. Civ. P. 56(d).[8] This rule is not, however, a "magic bullet" for delaying summary judgment:

> Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to allow parties to conduct discovery before entering summary judgment. The party defending a motion for summary judgment before discovery is adequate may request the court to postpone ruling on the motion until the discovery can be conducted. This provision, however, is not a shield that can be raised to block a

---

[8] Plaintiff has not actually filed a motion under Rule 56(d). He has, however, filed a response to the Gerdins' Motion to Dismiss and Alternatively for Summary Judgment. For the sake of thoroughness, the Court will proceed as though Plaintiff contested the propriety of summary judgment prior to discovery.

> motion for summary judgment without even the slightest showing by
> the opposing party that his opposition is meritorious.

*Humphreys v. Roche Biomedical Labs, Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993)

(citation omitted).

This lawsuit presents the rare case in which summary judgment is

appropriate before a plaintiff has conducted formal discovery. Plaintiff has

already submitted a wealth of facts, ranging from affidavits and private

investigators' notes to police reports and insurance claims. Plaintiff has not

indicated what further evidence he could adduce to prove his claims. Moreover,

Plaintiff has failed to demonstrate how additional evidence procured through

discovery would be able to rebut the movants' showing of an absence of a

genuine issue of material fact—the expiration of the statute of limitations.

Plaintiff has alleged a number of claims arising under Minnesota statutory

or common law. (*See generally* Compl.) A federal court exercising jurisdiction

over a case on the ground of diversity must apply the state law as declared by

the highest court. *De Vries v. Sig Ellingson, Co.*, 100 F.Supp. 781, 784 (D.Minn.

1951) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court is

therefore bound to apply Minnesota law to Plaintiff's substantive claims.

### A. Fraudulent Concealment

Plaintiff claims that the Gerdins fraudulently concealed information

regarding their involvement in the alleged conversion of Plaintiff's property.

(Compl. 4–8.) As an initial matter, the Court notes that fraudulent concealment is

13

not, in and of itself, a cause of action, but rather a doctrine that allows a plaintiff to toll the statute of limitations due to the fraudulent concealments undertaken by defendants. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918–19 (Minn. 1990) (discussing how to apply the doctrine of fraudulent concealment to a statute of limitations); *cf. Kansas City v. Fed. Pac. Elec. Co.*, 310 F.2d 271, 277 (8th Cir. 1962) ("[F]raudulent concealment of a cause of action . . . constitutes an implied exception to the statute of limitations"); *Bruske v. Hille*, 567 N.W.2d 872, 875 n.1 (S.D. 1997) ("Fraudulent concealment is not a cause of action, but a mechanism to toll a statute of limitations."). Instead, the Court construes Plaintiff's argument as an allegation that the fraudulent actions of the Gerdins tolled the statutes of limitations regarding his various claims.

Fraudulent concealment tolls the statute of limitations only if that concealment hid the facts which would establish a cause of action for the plaintiff. *Hydra-Mac, Inc.*, 450 N.W.2d at 918. A claimant must not have known about the facts giving rise to the causes of action, or could not have discovered the causes of action through ordinary diligence, in order to benefit from the tolling effects of fraudulent concealment. *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975). Normally in a statute of limitations context, fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for motions to dismiss. *See Hines v. A.O. Smith Harvestore Products*, 880 F.2d 995, 999 (8th Cir. 1989) (regarding same in context of summary judgment). "Where the [submissions]

14

leave[] no room for reasonable minds to differ on the issue, however, [a] court may properly resolve the issue as a matter of law." *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996). The Court finds that sufficient material has been presented so as to allow the Court to determine this issue as a matter of law.

In the case at hand, it is undisputed that Plaintiff was aware of the causes of action in his Complaint in 1999, when he submitted a claim to the Gerdins's insurer, State Farm.[9] (Compl., Appx. B.) Although it is unclear from Plaintiff's statements the exact date on which he became aware of the alleged facts underlying the  causes of action named in the Complaint,[10] he claims to have reported the alleged break-in and theft to the Robbinsdale Police Department prior to the State Farm claim, (Decl. at ¶ 26.), which was denied on September

---

[9] Plaintiff failed to include his original report to either the Robbinsdale Police Department or State Farm. As such, it is unclear from Plaintiff's submissions whether his report to State Farm alleged that the Gerdins were responsible for his loss. The response from State Farm, however, indicates that Plaintiff did name individuals in his report, and the fact that a report was submitted to the Gerdins' insurer strongly suggests that Plaintiff made allegations against the Gerdins. (Compl., Appx. B.) Notably, Plaintiff never asserts that he was unaware of the alleged invasion of his storage locker, but, instead, claims the actions taken by the Gerdins frustrated his "ability to investigate." (Doc. No. 59, Pl.'s Mem. in Opp., 6.)

[10] Plaintiff does not provide a date on which the alleged fraudulent concealment was insufficient to prevent his diligent investigation from discovering the Gerdins' alleged involvement in the theft. Instead, Plaintiff contends that "[v]irtually all of the new evidence has happened in the past six (6) years, a time when [the Gerdins] felt safe under the protection of the Statute of Limitations [sic]." (Decl. 50). The Court infers that Plaintiff believes that the tolling effect of the alleged fraudulent concealment therefore ended sometime after 2008.

27, 1999. (Compl., Appx. B.) Plaintiff's own submissions show that he has been aware of the Gerdins' alleged actions regarding the opening of the storage locker and removal of his property since 1999.[11]

Plaintiff argues that the Gerdins' efforts at frustrating Plaintiff's investigation of the alleged locker break-in should constitute fraudulent concealment. (Pl.'s Mem. in Opp., 2–10.) He asserts that the Gerdins "prevented Plaintiff from investigating or getting authorities to investigate," and that the "[f]raudulent concealment . . . never ended." (*Id.* at 7.) Plaintiff's statements belie his misunderstanding of the doctrine. Regardless of the number of ways fraudulent concealment may be perpetrated, and when the concealment occurred, once a plaintiff becomes aware of the facts underlying the cause of action, the tolling effect of such fraudulent concealment ends. *See Hydra-Mac, Inc.*, 450 N.W.2d at 918. To the extent that any fraudulent concealment took place, if any, there can be no dispute on this record that Plaintiff became aware of a trespass on the premises leased to him by the Gerdins in 1999.

---

[11] The Court notes that Plaintiff's brother, Steven Thornberg, wrote him a letter on July 10, 2002, castigating Plaintiff for accusing him of burglary, and informing Plaintiff that Thornberg had helped Dale Gerdin remove Plaintiff's items from the Gerdins's property. (Doc. No. 18, Appx. B.) If there had been any doubt in Plaintiff's mind as to whether or not he had a cause of action against the Gerdins, the 2002 letter should have removed all such concern. Thus, even assuming *arguendo* that the Gerdins fraudulently concealed their behavior from Plaintiff, the letter would have started the clock for the statutes of limitations applicable to Plaintiff's claims in 2002. All relevant statutes of limitations, *see infra*, would have expired in 2008, well before the commencement of this case in 2014.

Construing Plaintiff's submitted facts as true, the Court concludes that

Plaintiff had sufficient knowledge of the alleged break-in to pursue the causes of

action alleged by Plaintiff this lawsuit in 1999.

### B. Count Two: Trespass

Plaintiff argues that the Gerdins trespassed on his property when they

allegedly broke into his storage locker in 1999. (Compl. 8–9.) The Gerdins argue

that, even if such a trespass had taken place, Plaintiff's cause of action is time-

barred under Minnesota law. (Defs.'s Mem. 10.) Claims for civil trespass must be

brought within six years, or are time-barred. Minn. Stat. § 541.05 subd. 1(3);

*Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 705

(Minn. 2012). As discussed above, Plaintiff was sufficiently aware of the alleged

trespass in 1999 to have brought suit against the Gerdins. Instead, Plaintiff

waited fourteen years to file this lawsuit. Thus, as a matter of law, Plaintiff is time-

barred from seeking relief from the alleged trespass.

### C. Count Three: Conversion of Personal Property

Plaintiff argues that the Gerdins converted his personal property when they

allegedly broke open his storage locker and "stole all of Plaintiff's personal

property." (Compl. 9–10.) Again, the Gerdins argue that, even if such a

conversion had taken place, Plaintiff's cause of action is time-barred under

Minnesota law. (Defs.'s Mem. 10.) Minnesota law bars civil claims for taking

personal property unless commenced within six years of the alleged conversion.

Minn. Stat. § 541.05 subd.1(4); *see Herrmann v. Fossum*, 270 N.W.2d 18, 20

(Minn. 1978) (noting that Minnesota law provides six years for commencement of

actions alleging conversion). As discussed above, Plaintiff was sufficiently aware

of the alleged conversion in 1999 to have brought suit against the Gerdins.

Instead, he waited fourteen years to file this action. Plaintiff is time-barred from

seeking relief from the alleged conversion.

### D. Count Four: Unjust Enrichment

Plaintiff argues that the Gerdins were unjustly enriched by the alleged

trespass into his storage locker. (Compl. 10.) The Gerdins argue that, even if

such an enrichment had occurred, Plaintiff's cause of action is time-barred under

Minnesota law. (Defs.'s Mem. 11.) In order to establish a claim for unjust

enrichment, the claimant must show that another party knowingly received

something of value to which he was not entitled, and that the circumstances are

such that it would be unjust for that person to retain the benefit. *Schumacher v.*

*Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). Such a claim must be

filed within six years of the alleged unjust enrichment, or it is time-barred. Minn.

Stat. § 541.05 subd.1(1); *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. 1988)

(holding that Minn. Stat. § 541.05 subd.1(1) applies to unjust enrichment). As

discussed above, Plaintiff was sufficiently aware of the alleged unjust enrichment

in 1999 to have brought suit against the Gerdins. Instead, the Plaintiff waited

fourteen years to file this case. Plaintiff is time-barred from seeking relief from the

alleged unjust enrichment.

### E.  Count Five: Breach of Contract

Plaintiff asserts that the Gerdins breached his lease when they allegedly entered his locked storage locker and removed his belongings. (Compl. 11.) The Gerdins argue that, even if such a breach took place, Plaintiff's cause of action is time-barred under Minnesota law. (Defs.'s Mem. 11.) Plaintiffs alleging an action to recover for breach of contract in Minnesota must bring their claim within six years of the alleged breach, or find that the claim is time-barred. Minn. Stat. § 541.05 subd. 1(1); *Davies v. Waterstone Capital Mgmt., L.P.*, 856 N.W.2d 711, 719 (Minn. Ct. App. 2014). As discussed above, Plaintiff was sufficiently aware of the alleged breach of contract in 1999 to have brought suit against the Gerdins. Plaintiff waited roughly 14 years after he became aware of the alleged breach of contract before filing this suit. Plaintiff is therefore time-barred from seeking relief from the alleged breach of contract.

### F.  Count Six: Interference with Plaintiff's Property Right

Plaintiff contends that the Gerdins "inyerfered [sic] with [his] [p]roperty [r]ight" when they directed a "Third Party" to break the lock on and enter into Plaintiff's storage locker. (Compl. 12.) The Court interprets this as a claim of tortious interference. The Gerdins argue that, even if such interference took place, Plaintiff's cause of action is time-barred under Minnesota law. (Defs.'s Mem. 10.) An action to recover for tortious interference in Minnesota must be commenced within six years of the alleged breach, or it is time-barred. Minn. Stat. § 541.05 subd. 1(1); *Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 401

(Minn. Ct. App. 1999). As discussed above, the undisputed facts show that Plaintiff was sufficiently aware of the alleged tortious interference in 1999 to have brought suit against the Gerdins. Instead, Plaintiff waited fourteen years to file the instant action. Plaintiff is time-barred from seeking relief from the alleged tortious interference.

### G. Count Nine: Wrongful Eviction of Personal Property

Plaintiff contends that the Gerdins "wrongfully evicted" his belongings from his storage locker in violation of Minnesota Statute § 504B.365, subdivision 3, when they allegedly removed his property from his storage locker. (Compl. 14.) The Gerdins argue that, even if such eviction took place, Plaintiff's cause of action is time-barred under Minnesota law. (Defs.'s Mem. 10.) The section of Minnesota statutes that Plaintiff cites deals with the execution of the writ of recovery of premises and orders to vacate. Minn. Stat. § 504B.365, subd. 3. No such writ or order is alleged to have existed. The Court is unable to determine the exact cause of action Plaintiff is asserting. The Court finds, however, that whatever cause of action Plaintiff has alleged is time-barred under Minnesota law, as discussed below.

Assuming Plaintiff has alleged a cause of action under a Minnesota statute that provides for liability of the Gerdins, Minn. Stat. § 541.05 subd. 1(2) provides that liabilities created by statute are subject to a statute of limitations of six years. As discussed above, Plaintiff was sufficiently aware of the alleged "wrongful

eviction" in 1999 to have brought suit against the Gerdins for whatever liabilities he believes was incurred under Minnesota law. Instead, he waited fourteen years to file his Complaint. Plaintiff is time-barred from seeking relief for a wrongful eviction.

Alternatively, Plaintiff may have intended to allege a cause of action under Minn. Stat. § 504B.365, subd. 5. This statute provides that "[u]nless the premises has been abandoned . . . [a landlord who] removes [a tenant's] personal property in violation of this section is guilty of an unlawful ouster under section 504B.231 and is subject to penalty under section 504B.225." *Id.* Minnesota has a two-year statute of limitations for claims seeking statutory penalties. Minn. Stat. § 541.07(2). As discussed above, Plaintiff was sufficiently aware of the alleged "wrongful eviction" in 1999 to have brought suit against the Gerdins then. Instead, Plaintiff waited fourteen years to file this case. Plaintiff is time-barred from seeking relief from unlawful ouster.

### H. Count Seven: Aiding and Abetting the Conversion of Personal Property

Plaintiff contends that the Gerdins "aided and abetted" in the conversion of the personal property in his storage locker by allegedly assisting a "Third Party" in removing the contents of Plaintiff's storage locker. (Compl. 13.) The Gerdins construe Plaintiff's argument as one alleging a count of conversion, and assert that such claims are time-barred under Minnesota law. (Defs.'s Mem. 10–11.) Aiding and abetting the tortious conduct of another is, in and of itself, not

independently actionable. *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 228 n.2 (Minn. 2014). It is, instead, a method of holding a defendant vicariously liable for the tortious act of another. *Id.* According to Plaintiff, that "another" is one unnamed "Third Party."[12] (Compl. 13.) Claims regarding aiding and abetting are, therefore, time-barred on the same basis as the underlying tort. *Cf. Tisdell v. Valadaco*, C59976, 2002 WL 31368336, at *12 (Minn. Ct. App. Oct. 16, 2002) ("the lack of a colorable claim for [a tort] negates any claim for joint and several liability" under the theory of aiding and abetting.) As discussed above, Plaintiff was aware of the actions of the Gerdins and the "Third Party" that would give rise to the claim of conversion in 1999. Instead seeking recovery within the limitations period for any of his tort claims, Plaintiff waited fourteen years to file this case. Plaintiff is time-barred from seeking relief from this claim.

Plaintiff forwards various statutes to support his claim of aiding and abetting. (Compl. 13.) These statutes are not relevant to conversion or aiding and abetting. Instead, the statutes deal with writs of recovery, orders to vacate, and intentional ouster. *See* Minn. Stat. §§ 504B.365, subd. 3, 504B.231. As discussed, supra pp. 20-21, claims arising under these statutes are also time-barred.

---

[12] The Court infers that the "Third Party" described in the complaint is most likely Steven Thornberg, based on both Plaintiff's statements (Pl.'s Decl.) and Plaintiff's Motion to Amend (Doc. No. 62, Pl.'s Mot. to Amend.).

## I.  Count Eight: Theft of Personal Property

Plaintiff argues that the Gerdins became civilly liable for theft of his property when they allegedly broke into Plaintiff's storage locker and removed his belongings. (Compl. 13–14.) The Gerdins contend that this claim is essentially a second bite at the apple of conversion, and, as conversion actions have a six-year statute of limitations, this claim is time-barred. (Defs.'s Mem. 10–11.) Civil liability for theft is statutorily-provided and distinct from Plaintiff's claim of conversion. Civil liability for theft provides that individuals who steal personal property from another are "civilly liable to the owner of the property[.]" Minn. Stat. § 604.14. Minnesota bars recovery for claims based on a state statute after six years. Minn. Stat. § 541.05 subd. 1(2). As discussed above, Plaintiff was sufficiently aware of the alleged theft in 1999 to have brought suit against the Gerdins under a civil theft theory within the next six years. He did not. Instead, he waited fourteen years to assert such a claim. Plaintiff is time-barred from seeking relief from this claim.

## II.    Motion to Amend the Complaint Under Rule 15(a)(2)

Plaintiff seeks to amend his complaint under Fed. R. Civ. P. 15(a)(2), which calls for the Court to "freely give leave" to amend complaints "when justice so requires." The Gerdins have opposed the motion on the grounds that: (1) Plaintiff has not uncovered new evidence since the suit's commencement over a year ago; (2) the newly-asserted claims would be time-barred and thus an

amendment is futile; and (3) Plaintiff has failed to comply with local rules.[13] (Doc. No. 66, Defs.'s Mot. in Opposition, 2.)

Leave to amend a complaint should be freely given in the absence of any apparent reasons such as undue delay, bad faith or dilatory motive on part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to opposing party by virtue of allowance of amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Where there is evidence that a plaintiff knew of the parties he seeks to add prior to the beginning of the suit, a court may properly deny the motion to amend as unduly dilatory. *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009). The grant or denial of an opportunity to amend is within the discretion of the District Court, but, in the event of a denial, a court should provide its justifications for doing so. *Foman*, 371 U.S. at 182. Here, the circumstances weigh heavily on the side of denying Plaintiff's Motion to Amend.

Plaintiff's attempt to amend the Complaint to add two "new" defendants and a tenth claim comes at the twilight of an old suit after the submission of a motion to dismiss the last two named defendants. In Plaintiff's Declaration, filed on June 20, 2014, Plaintiff accused Susan Mericle and Steven Thornberg, along with six other individuals aside from the Gerdins, of participating in the alleged

---

[13] Because the Court denies Plaintiff's Motion to Amend based on Plaintiff's dilatory tactics, undue delay, and the futility of amending the complaint in the proposed manner, the Court does not address the Gerdins' other arguments.

"robbery and cover-up." (Decl. at 33.) No discovery has taken place in this case, as per the November 19, 2014 Order on Motion to Strike and Pretrial Scheduling (Doc. No. 48.) Plaintiff's motion to amend, then, is based off of knowledge he has had since the dawn of the case over a year ago—the definition of undue delay.

His decision to only add two of the remaining six named individuals in the alleged conspiracy suggests that Plaintiff is attempting to engage in a dilatory tactic of extending this case through amendments to the complaint. Failing to amend the complaint earlier to include Steven Thornberg is particularly indicative of these tactics, given that Plaintiff himself has submitted a letter from Thornberg discussing how he removed Plaintiff's items from the storage locker, and Plaintiff has repeatedly asserted that his brother was the individual responsible for the alleged theft. The fact that Plaintiff, despite clearly knowing the individuals involved in the alleged conspiracy, is adding only two—not the remaining six— also casts doubt on Plaintiff's good faith intentions in filing this motion.

His prior knowledge of these two "new" defendants demonstrates the futility of amending his complaint. Plaintiff was well-aware of Susan Mericle's and Steven Thornberg's alleged involvement in the facts in dispute by 2002. (*See, e.g.*, Decl. 24–26, 33 (discussing awareness of the "Gerdin Klan" and their involvement in the alleged actions by, at the latest, 2002).) Plaintiff commenced the current action roughly twelve years after his awareness of these individuals'

involvement, and adding them as defendants would be futile because all of his current claims are time-barred.

Finally, Plaintiff's attempt to amend his complaint to add a claim of conspiracy would also be futile. "A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means." *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950) (internal quotation and citation omitted). In civil conspiracy cases, "liability is predicated upon the tort committed by the conspirators, [and] allegations of conspiracy do not change the nature of the cause of action." *Id.* at 825. When the tort underlying the charge of conspiracy is legally insufficient—such as when it is barred by a statute of limitations—the conspiracy count fails. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997) (citing *Harding*, 41 N.W.2d at 824). The Court notes that Plaintiff wants to add, simply, "[c]onspiracy as Cause of Action X," without specifying any underlying cause of action. (Pl.'s Mot. to Amend.) The Court assumes, from Plaintiff's accompanying Memorandum where he laid out the underlying facts of his amendment, that Plaintiff intended to incorporate all of his prior causes of action underneath the umbrella of a single cause of action of conspiracy.[14] All of Plaintiff's underlying causes of action are time-barred. Plaintiff's added conspiracy claim would, therefore, also be time-barred. Amending his complaint to add this claim would be futile.

---

[14]     Otherwise, as noted above, the conspiracy claim would be groundless, as it requires an underlying cause of action to itself be actionable.

Based on the above, Plaintiff's Motion to Amend should be denied.

## RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' motion to dismiss (Doc. No. 50), be **GRANTED**;

2.  Plaintiff's motion to amend (Doc. No. 62), be **DENIED**; and

3.  This case be **DISMISSED WITH PREJUDICE**, and judgment be entered accordingly.

Date: April 14, 2015

_s/ Jeffrey J. Keyes_

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 28, 2015,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to **3500 words**. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.